Our first case for argument is 22-2006 Koki Holdings v. ITC. How do I say your name? Is it Parikh? Yes. Mr. Parikh, please proceed. Good morning and may it please the court. My name is Amal Parikh and I represent the appellant, Koki Holdings, in this case. The commission violated Section 337C when it terminated the underlying investigation based on Kyocera's unilateral withdrawal of its complaint without deciding whether or not there was a Section 337 violation. The court should reverse the commission's termination and remand with instructions that the commission determine whether or not there was a violation based on the record below. Before you get into those merits, though, I think that you should probably address the standing question because that's sort of a threshold issue for us here. Yes, Your Honor. So in terms of standing, Koki has Article III standing for multiple reasons. The first is that Koki was injured by the commission's non-preclusive, ultra-various decision in which Koki lost its ability to succeed Boel and which also allows Kyocera to bring a second investigation. But isn't that speculative? I mean, that's something in the future that might happen, might not happen. Kyocera has already threatened a second investigation against the same product design that was accused in the first. Is that in this record? It is in the record, Your Honor. What is the threatened second investigation? Because was that before or after their email where they said they wouldn't do that? Well, the email says they would not bring a second investigation against the original products. We tried to clarify to ask if they would bring a second investigation against the original product design and Kyocera refused. What is the distinction that you're trying to draw there, though, in terms of against the original products versus against the original product design? So in the ITC, the only relief that's available is prospective. It's in the future. But the ITC has jurisdiction over products that have been imported and products that will be imported in the future. What Kyocera has done is they've said they've given us a release saying we will not accuse products that were subject to the first investigation, the actual products. But the product design itself, they have not given a release on that going forward. But I thought also another concern is you aren't really responding to them fully in terms of what you intend to or are currently planning to sell. I saw there was some discussion back and forth in the record on that. Can you clarify that for me?  So Kyocera would like the freedom to import that original product design going forward. Koki has essentially been coerced because of a threat against that product design from changing their business plan to now bring in that original product design. Koki would like the freedom to bring in the design. But because of the threatened investigation, there's this cloud hanging over Koki on if they bring in that original product design, they'll be sued based on an investigation that Kyocera has already threatened. So this is a threat about future products, not anything that's already happened. And I thought that's what the email says when they submit it. It's future products of the same design that have already been accused of infringement and that there's been seven years of litigation involving. Okay, show me where that is the case. Because I'll be honest, I read the email, and to me it looked like they're not going to accuse this product. And I really understood this dispute to be more about if you did a redesign or a modified product, would that be within the scope? I didn't understand them to be saying, if you bring another identical product to this into the country next week, we're going to bring suit against you. So show me where that is. Where there's some evidence that this release is for more than just or only limited to these products, do you understand? So if we look at Appendix 4110. Yeah, I'm right there, yeah. So that's the original email from Kyocera where they say, I got that. But it's not now or ever. I'm very familiar with that. Okay, so if we go to my response, which is on 4109. Okay. And we said that, so it's the fourth line from the bottom of the first paragraph where we sought clarification, and we said, we understand you to be saying that Kyocera does not plan to file a Section 337 complaint. Yeah, I can't really find where you're at. I'm at 4109. Where's the we understand line? So the third line from the bottom of the first paragraph. Oh, the first paragraph. We say third line from the bottom. People usually think that means the bottom of the second. I'm sorry, I thought I was. That's okay. Third line from the bottom of the second paragraph, I should say. I got it, and I'm there. So it says, we understand you to be saying that Kyocera does not plan to file a Section 337 complaint premised on prior shipments of the original products, but reserves the right to file a Section 337 complaint premised on ongoing and future shipments of the original products. And there was never any clarification, no response from Kyocera that our, that Koki's understanding was incorrect, that they would bring a second investigation against shipments of future products of the original design which have been subject to, or which are subject of the current investigation. Okay, if they agreed here today that, because I don't see them saying anything to contradict or support what you've said. But if today they say, listen, we thought we were clear. No, you can bring in as many of these original design products as you want. You modify them. That's a whole different ball of wax. But if it's the exact same design, have at it. And we're not suing. If they say that here today, do you then agree there's no standing? I think there is still standing. One, because it comes too late. The covenant not to sue comes too late. We discussed this in our brief. Well, not if I understood the covenant not to sue on 4110 to actually include all products of that design, right? And I kind of feel like the ITC, I don't know, that's kind of what I think. But we'll see what they say. We tried to clarify that two years ago. There's been no communication in the last two years. So I think on the record before us, Kyocera is reserving the right to bring a future investigation against ongoing shipments of the originally designed products. Well, I mean, it feels like you've already got a win, but you're kind of disputing the way the win came in. I mean, why are you really here? What is having you be motivated to come talk to three of us today? It's to achieve a preclusive decision at the ITC. If the case is remanded with instructions for the ITC to determine whether there's a violation or no violation, that decision of no violation would have a preclusive effect against the original product design and any colorable variations of that design. As it stands right now. Wait, wait, wait. You just added something in. I thought I heard something new. You talked about any colorable variations. I thought when we were just looking at these pages of the appendix, what I'm going to call a covenant not to sue, I'm just going to use that terminology because I feel like that's what was used in the briefing. It seemed like it was stated a little differently. The release, I agree with Your Honor, that the release is different, that it applies to the original products. What the release would not cover is ongoing shipments of the original design in the future, and it does not cover colorable variations of that product. To answer your question of what we're seeking, if it's remanded to the ITC with instructions that the ITC issue a violation, no violation decision, and we achieve a no violation decision, the ITC's order would cover the original products, future shipments of the original products having the same design, and colorable variations of that design. So the relief that would be sought on remand is much larger than the release that is, or the covenant, not to sue, that is. Yeah, but that's the speculative thing. You don't have a design. You don't have another design. You haven't produced any evidence. That's the part that's speculative. We have the original design. Yes, right. But that's what we're going to try to get to the bottom of on the standing question, is whether or not their release is to the original design or not. But certainly the modified, the substantial modifications or whatever, that's all speculative. Sorry, that's out. So the issue becomes, because of the colorable variations, if we change the color of the product or give it a new product number, for instance, which we have done in the past, that would not be covered by the release. It would be covered by a remand or a determination of violation. But if there's no evidence, you're going to do any of that. You can't just speculate. If we did this, you provided no evidence of any potential change in products and future importation. I don't think we needed to provide evidence of that because there has been a prior importation of those products. And I would cite the court to the Grit case, the Revolution case, and the Metamune case that we discussed in our brief, and particularly the Revolution case where the covenant not to sue did not cover future sales of the product which had been accused of infringement. And in Revolution, the court found that there was sufficient article freestanding. In Grit as well, there was no ongoing activity of alleged infringement, but there had been prior acts of infringement. And in that case, the court had found that there was jurisdiction. And then in Metamune, which was in the context of a declaratory judgment action, there the court found that self-avoidance of an imminent injury, so stopping importation of a product because of the cloud that's hanging over what would happen with that importation, that was sufficient to confer standing because there had been a threat of infringement against the original product design. And simply because the defendant stopped selling that design did not divest the court or the defendant of standing. So you think just a threat is sufficient to confer standing? Yeah, under those cases, it's the threat. And then in addition, the motion to intervene where Kyocera intervened in this case because, and the basis of that was because they wanted to bring or could bring a new investigation against Koki or anybody else. But the fact that it's against Koki is additional evidence of a threat against Koki and the original product design, which was the subject or is the subject of the investigation. And does Koki currently import or plan to import the original tools? There's been, they'd like the freedom to import. The problem is it's the, because of this cloud of uncertainty that's hanging over it that as soon as it imports the design, there could be an investigation and that second investigation is already going on right now. They're currently not doing it. They do it outside of the United States. They have the design. And what about the modified tools? What's the plan for that? The modified tools are being imported currently into the United States. What about answering, though, the judge's question in terms of a plan to import the original? Is there a plan to? I understand they're not doing it. That's what you just answered. But is there a plan? I don't know if there's a definitive plan because of the threat of the investigation and the cloud that's hanging over. Yeah, but what you could have done and what we see in these cases along the lines of Judge Cunningham's question is we usually see some sort of evidence, like a declaration by the CEO or the product developer saying, but for this cloud, we would bring these products in. And you don't have anything like that. That's why the speculative part is a problem for you. We don't have that. But again, I would point to the Menomine case as well as the Grid case where there was no declarations that were provided. It was because the original products had been introduced into the United States and imported into the United States. Then there was a threat of an enforcement action or an action against those products. There is no threat here. QSR has already said that there was a threat. And they've said that in their... Where's the threat? I don't see the threat. Where? It was in the email. Show me. Show me the threat. I'd again go back to 4109. That's you. 4109 is you. That's not them. They're not making a threat when you send an email. And then I would also point to QSR's motion for leave to intervene. And this is ECF number 9. I need to know what page in the appendix. That's not in the appendix. That's part of the... So you're now telling me they made a threat and you didn't give it to us. No, it's in the court's record. It's in the... QSR's motion to intervene. So it's part of the court file. It's ECF number 9. So it's not in your appendix, but you filed something separate from your appendix? QSR filed something separate when they tried to intervene into this case. Do I have that somewhere? For the record, I'd point the court to page 6 of QSR's motion to intervene, which is ECF number 9. And it states that QSR says, a determination in respect to the scope of the patents at issue, which may affect QSR's ability to enforce those patents again at the commission, either against Pilkey or anyone else, is a determination in which QSR has an interest. And that's when we tried to... What you just read does not sound like a threat with regard to these products. It just sounds like they're saying we reserve the right to enforce our patents. Right. And when we tried to clarify with QSR that are you reserving the right to file a complaint premised on ongoing and future shipments of the original products... Where did you try and clarify that? Is that this 4109? 4109. Yeah, but that's beforehand. You said when we tried to clarify, you make it sound like you asked them to clarify what they just said in this filing. This filing is later in time than this. So when you say something in 2022, you're not... Am I missing something? So the filing was August of 2022. The email correspondence was December 16th, 2022.  So it's a few months after. Got it. So after all this happened, Koki wanted certainty. And I see I'm in my rebuttal time if I could finish answering real quick. Koki wanted certainty on, are we going to be sued if we bring these new products into the United States? Because Kyocera has already threatened an investigation. What new products? I'm sorry. The original new product with the original design. That was the clarification that Koki sought. And we did not get clarification. Koki did not get clarification of that. So in the email, we provided Kyocera with our understanding of what the release covers and that Kyocera reserves the right to file a complaint premised on ongoing and future shipments of the original products. Kyocera never responded to that. So it's that threat, that cloud, the sword of Damocles hanging over Koki, that if we're going to bring these products in, are we going to be, is there going to be business disruption because there's going to be a new suit? All right, why don't you give one minute on why the commission, because I mean, now we're sort of out of time. Give me one minute on why the commission erred by terminating the investigation. Because I don't want you to not be able to say it on rebuttal if they talk about it. Understood. So we have to look at the statute, section 337C, which says that, requires that the commission shall determine with respect to each investigation conducted by it under this section whether or not there is a violation. That shall language of the commission must determine whether or not there's a violation. There are three exceptions in paragraph C of section 337, which permits the commission to terminate. That's if there's an arbitration agreement, a consent agreement, or settlement by the parties. None of that exists here. And then really quickly, going to the commission's rule, under the commission's rule, which this court is not bound by, but the commission did not follow its own rules, the commission is permitted to terminate a complaint or withdraw, have a complaint withdrawn before an initial determination issues. Here, we've already had an initial determination issue. So that section does not count, or does not apply. And then the other sections generally track the statute, which is a consent order, an arbitration agreement, or a settlement agreement. So based on the commission's rules and the statute. Okay, you went past your minute. Sit down. Let's have them up here now. Okay, do I have to move first? Mr. Richards? Yes. Okay. Mr. Richards, are you... Which person do you represent? I'm for the commission, Your Honor.  Okay. May it please the court... Can I switch the order? Would you object terribly if I asked him to go first? Because I care about standing, and he can answer those questions on standing, and you can't? No, I... Do you mind if I ask him to go first? Not at all. We're perfectly happy with whatever the court would prefer. Thank you. I suppose I should have asked my toe counsel here, but... Good luck. Thank you, Your Honor. May it please the court... Wait, hold on. Switch the time, right? Is that right? Okay, good. Thank you, Your Honor. May it please the court... So is there a sword hanging over the neck? Not on any products that actually exist. So page 7 of our brief, which is after the e-mail exchange that my friend referenced, we say, and we underlined this on page 7 of our brief, we bolded it and underlined it for the court and for Cokie, that Kyostera is not now or ever going to bring an action in the ITC again on either the original products accused or the modified tools that were subject to the modification proceeding. That's just the e-mail. Okay, but... No, no, no, Your Honor. Well, that is our position that we've represented now to the court and I'm representing now to the court. And I need clarification on it. Okay. And the clarification is, are you just talking about the physical products previously produced or if they make another identical product, same color, same serial number, no changes of any kind, and they try to bring it into the country, are you reserving the right to sue them with the identical product? No, absolutely not. But when we're talking about original... You've had your release. So just to be crystal clear, you are going to be judicially stopped. I am making a very clear record here. You will never see them. You have coveted, and that's what I understood when I read your e-mail, which is why I was worried. You have now coveted that on behalf of your client, you will never ask the commission to bar them from bringing in the identical product. I don't mean the same physical version. I mean a newly produced identical product. Absolutely, Your Honor, 100%. So the only question then is my friend's concern about future products, which are, of course... Future products which would be different in some way. Which would be different. Which would be different in some way. And we don't know what that difference is. We've got a laundry list in Cokie's brief, I think on page 13 of their brief, of different nail magazines, different battery sizes, whatever. But there's nothing specific. We don't know. And this court has, and the Supreme Court has repeatedly said, conjectural or hypothetical injuries do not confer standing. So there is no tool that Cokie can now not... That the commission could exclude. And if the court were to grant Cokie's request and remand to the ITC, the ITC cannot on remand do anything. That would enlarge any of Cokie's rights. I don't think I have anything else that I could say, and I cede the rest of my time to my friend. Very good. Good choice. Your Honor, Benjamin Richards again. Your job's a little easier now. I have exceedingly little to say. That's excellent. I think most of the argument just fell out. Thank you. This is a really good argument. To the extent there is one case I can point you to that might give you still additional comfort. This court's Brain Life case lays out the scope of preclusive effect and would show that even these future products that are sort of being bandied about aren't going to be covered by preclusive effect here. That's this circuit's law on preclusive effect. It doesn't cover... Infections. Exactly. It doesn't cover future instances of infringement. Can you respond, though, to opposing counsel's argument that somehow you did something that you weren't allowed to do in terms of the commission? I know you also point to your rules and the like, but if you could just give me a little gloss on your response to the arguments that they raised in that regard. Sure. As I understand it, you're referring to the merits portion of this case. So, essentially, counsel has represented that the commission couldn't dismiss this case once the complaint is withdrawn. Once the complaint was withdrawn and the complainant said, we don't want to go forward anymore, there was nothing left for the commission to investigate. I think if there is one central error to the way that my friend reads the statute, it's taking this portion of 337C about shall determine out of context. The immediately preceding subsection, 337B, states that the investigation has to be predicated on one of two things. Either a complaint or upon the commission's own initiative. Now, no one contends that the commission conducted this investigation on its own initiative. It was conducted on a complaint. But that complaint has now been withdrawn. We don't have a complainant that wants to go forward. And so the result is the commission rightly found that to try to force, I guess, complainants to move forward with a case they don't want to move forward to would just waste public resources. There's nothing there inconsistent with 337B, I'm sorry, 337C in the shall determine language, which deals with when the commission can terminate an investigation without a complainant's consent, i.e. when there is still a complaint. So that's the distinction I would make, Your Honor. Unless the court has other questions, I'm also happy to cede the rest of my time back. Thank you very much. Mr. Parikh will restore two minutes of rebuttal time. So this is the first time that we're hearing this post-termination statement, that it would cover the original design and future product. Assuming that is the case, two things. One, it would not cover colorable variations, which we would have gotten, COKI would have gotten on the termination. Second, and more importantly, if the court were to accept, and we discussed this in our brief on page 17, if the court were to accept the new release that covers future product, the appropriate mechanism would be to, and this is in the Deakins case and the Smith case, which we cite, that to remand the case back to the ITC with instructions to terminate with prejudice. Even if there's not going to be a violation or no violation finding, there still needs to be a termination with prejudice of the underlying. Why is that necessary since you have a binding omission? It would cover the colorable differences, which is what COKI would have gotten had there been a binding of violation or no violation. Yeah, but the ITC doesn't have to dismiss with prejudice. Honestly, I read that email as giving you the green light on the same products. You were saying your client was confused about it. He came in and clarified. With all due respect, I don't read it as a new admission. I read it as an admission they made. Could they have maybe made the language a tiny bit clearer? Yes, probably. But I read it that way to the start, which is why I was kind of so surprised that you felt otherwise. So in light of all that, ITC doesn't dismiss with prejudice in that case. The ITC was perfectly within its province to just dismiss. I disagree with that for the reasons I would say in our brief, where under the statute, the ITC has to determine whether there is a violation or no violation, which is why the ITC does not dismiss with prejudice or without prejudice because the statute requires the ITC to determine whether or not there is a violation. If the ITC makes that determination or when the ITC makes that determination, it has preclusive effect. And you continue to think the ITC has to do that even when the patentee has withdrawn all allegations. Based on a plain reading of the statute, yes, Your Honor. All right, we have your argument. Thank both counsel. This case is taken under submission.